



# MEMORANDUM OPINION

No. 04-10-00774-CV

**TEXAS DEPARTMENT OF PUBLIC SAFETY**,
Appellant

v.

Larry Robert **DAVIS**,
Appellee

From the County Court At Law No. 10, Bexar County, Texas
Trial Court No. 360866
Honorable Irene Rios, Judge Presiding

Opinion by:     Steven C. Hilbig, Justice

Sitting:         Karen Angelini, Justice
                 Steven C. Hilbig, Justice
                 Marialyn Barnard, Justice

Delivered and Filed:  July 20, 2011

REVERSED AND RENDERED

The Texas Department of Public Safety (DPS) appeals the trial court's judgment reversing the administrative law judge's suspension of Larry Robert Davis's driver's license for refusing to submit a breath specimen. We reverse the trial court's judgment and render judgment reinstating the suspension of Davis's driver's license.

## BACKGROUND

On April 22, 2010, Officer Flores of the San Antonio Police Department arrested Davis for driving while intoxicated (DWI). Flores's report states he observed Davis traveling on U.S. Highway 281 (a sixty-five mile per hour zone) at rates of speed up to seventy-two miles per hour, making sharp lane changes, and weaving outside his lane. Flores reported he pulled Davis over and observed that Davis had glassy, bloodshot eyes, slurred speech, and a strong odor of alcohol on his breath. Flores then performed three field sobriety tests on Davis, and Flores stated Davis showed signs of intoxication on all three. Davis admitted to drinking earlier that evening. The narrative section of Flores's report states Davis was read the DIC-24 statutory warnings[1] and Davis refused to give a breath specimen. However, the box on the DIC-24 form that indicates the subject refused the breath test was not checked, and the form was not signed by Davis. Flores reported he transported Davis to the city jail and obtained a warrant for a mandatory blood specimen from Davis.

DPS automatically suspended Davis's driver's license based on his refusal to submit a breath specimen. Davis appealed the license suspension to the State Office of Administrative Hearings. Flores did not appear at the administrative hearing, but his police report was placed in evidence without objection. Flores's report consisted of a sworn report, a DWI/Traffic Case report, a field sobriety checklist, and a statutory warnings (DIC-24) form. At the hearing, Davis testified he did not refuse to submit a breath specimen, and that Flores neither requested a breath specimen nor read Davis the warnings contained in the DIC-24 form. Davis testified his eyes

---

[1] Before requesting that a person submit to the taking of a specimen the officer must provide the person with certain information orally and in writing, including that the refusal will result in an automatic suspension of the person's license to operate a motor vehicle for not less than 180 days. TEX. TRANSP. CODE ANN. § 724.015 (West 2011). The DIC-24 Form contains the information the statute requires to be given in writing.

were bloodshot because he worked late and his mouth was dry from his diabetes. He also denied failing any field sobriety tests and asserted Flores performed the Horizontal Gaze Nystagmus (HGN) field sobriety test incorrectly. Davis testified the reason he knew this was because as a physician he has performed HGN test. In closing, Davis argued that Flores had no reasonable suspicion to stop him or probable cause to arrest him, and there was no proof that Davis received the statutory warnings or refused to give a breath specimen. The State asserted that Flores's detailed observations of Davis's driving and condition, compounded with Davis's admission to drinking, made Flores's report more credible than Davis's testimony.

The administrative law judge ("ALJ") rendered judgment affirming the suspension of Davis's driver's license for 180 days. The ALJ made the following findings of fact:

1) On April 22, 2010, reasonable suspicion to stop and detain Defendant existed. On that date a Texas peace officer within his jurisdiction observed Defendant operate a motor vehicle northbound on U.S. 281, a Texas public roadway, at a high rate of speed making hard abrupt lane changes. Defendant was also observed weaving out of his lane of travel. The officer noted traffic was getting heavy and Defendant continued to fail to travel within his own lane. As the officer got closer to the St. Marys [sic] exit he activated his emergency lights to stop Defendant. Defendant pulled to the right side of the road and came close to striking a dog that was walking on the side of the highway. The officer believed it unusual that Defendant did not see the dog until the last moment.

2) On the same date, probable cause to arrest Defendant existed, in that probable cause existed to believe the Defendant was operating a motor vehicle in a public place while intoxicated. In addition to the facts in No. 1, a Texas peace officer noticed a strong odor of intoxicants on Defendant's breath. Defendant admitted drinking whisky, had glassy bloodshot eyes, slurred speech and was hesitant and swayed in his balance. The officer gave Defendant the Walk and Turn Test and noticed 4 of 8 clues indicating intoxication. Defendant had 3 of 4 clues indicating intoxication during the One Leg Stand Test.

3) Defendant was placed under arrest and was properly asked to submit a specimen of breath or blood.

4) After being requested to submit a specimen of breath or blood, Defendant refused.

Davis appealed the ALJ ruling to the trial court, and asserted there was no evidence that he either was requested to give a breath specimen or refused to do so. The trial court rendered judgment reversing the ALJ ruling and reinstated Davis's driver's license. DPS appeals.

## STANDARD OF REVIEW

A court reviewing an administrative order is required to examine the ALJ's order to determine whether it is supported by substantial evidence considering the record as a whole. TEX. GOV'T CODE ANN. § 2001.174 (2)(E) (West 2008); *Mireles v. Tex. Dep't of Pub. Safety*, 9 S.W.3d 128, 131 (Tex. 1999). A reviewing court may not substitute its judgment regarding the weight of the evidence or witness credibility for that of the ALJ. *Tex. Dep't of Pub. Safety v. Gonzales*, 276 S.W.3d 88, 91 (Tex. App.—San Antonio 2008, no pet.); *Tex. Dep't of Pub. Safety v. Sanchez*, 82 S.W.3d 506, 511 (Tex. App.—San Antonio 2002, no pet). "The issue for the reviewing court is not whether the [ALJ's] decision was correct, but only whether the record demonstrates some reasonable basis for the [] decision." *Mireles*, 9 S.W.3d at 131. It is presumed that substantial evidence supports the ALJ's findings, inferences, conclusions, and decisions, and the burden is on the complaining party to prove otherwise. *City of El Paso v. Pub. Util. Comm'n*, 883 S.W.2d 179, 185 (Tex. 1994); *Gonzales*, 276 S.W.3d at 91. If more than a scintilla of evidence supports the ALJ's findings in a contested case, the reviewing court must affirm the administrative decision even if the evidence preponderates against it. *Mireles*, 9 S.W.3d at 131. We review the trial court's determination *de novo*. *Gonzales*, 276 S.W.3d at 91; *Tex. Dep't of Pub. Safety v. Pruitt*, 75 S.W.3d 634, 640 (Tex. App.—San Antonio 2002, no pet.).

**DISCUSSION**

*Burden of Proof for License Suspension*

At the license suspension hearing, DPS had to prove: 1) reasonable suspicion or probable cause existed to stop or arrest Davis; 2) probable cause existed to believe Davis was driving a motor vehicle in a public place while intoxicated; 3) Davis was placed under arrest by Flores and was requested to submit a breath or blood specimen; and 4) Davis refused to submit to the taking of a breath or blood specimen. *See* TEX. TRANSP. CODE ANN. § 724.042 (West 2011).

*Reasonable Suspicion to Stop*

"Reasonable suspicion exists if the officer has specific, articulable facts that, when combined with rational inferences from those facts, would lead him to reasonably conclude that a particular person actually is, has been, or soon will be engaged in criminal activity." *Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005). Under this standard, the court looks solely to whether an objective basis for the stop exists, based on the totality of the circumstances. *Id*. An officer's witnessing of a traffic violation, or reasonable suspicion that one is in progress or had been committed, justifies a stop and detention. *Gonzales*, 276 S.W.3d at 92; *Tex. Dep't of Pub. Safety v. Fisher*, 56 S.W.3d 159, 163 (Tex. App.—Dallas 2001, no pet.).

Flores's report states he observed Davis's vehicle traveling at a high rate of speed and making lane changes in an abrupt manner. Flores reported the vehicle at one point reached seventy-two miles per hour in a sixty-five mile per hour zone, which constitutes prima facie evidence the speed is not reasonable and prudent and that the speed is unlawful. *See* TEX. TRANSP. CODE ANN. § 545.352(a) (West 2011). At a minimum, Flores had reasonable suspicion to stop Davis based on Flores's personal observations of Davis's violation of Texas traffic laws

prohibiting speeding. *See id.* Thus, there is more than a scintilla of evidence to support the ALJ's finding of reasonable suspicion.

### Probable Cause to Arrest for Driving While Intoxicated

The ALJ determined probable cause existed to believe Davis was intoxicated while operating a motor vehicle in a public place. Flores's report stated Davis's eyes were bloodshot and glassy, there was a strong alcohol odor on Davis's breath, his speech was slurred, and he spoke with a heavy tongue. Flores also observed that Davis swayed, could not balance, walk, or turn properly, and could not maintain a straight line during field tests.

Flores's report provides more than a scintilla of evidence that Flores had probable cause to arrest Davis for DWI. *See Tex. Dep't of Pub. Safety v. Fecci*, 989 S.W.2d 135, 140 (Tex. App.—San Antonio 1999, pet. denied) (holding poor performance on three sobriety tests, strong odor of alcohol, slurred speech, and bloodshot eyes established probable cause); *Held v. State*, 948 S.W.2d 45, 51 (Tex. App.—Houston [14th Dist.] 1997, pet ref'd) (holding that smelling of alcohol, slurred speech, glassy, bloodshot eyes, leaning on car for support, and failing field sobriety tests constituted probable cause to arrest). Consequently, there is substantial evidence to support the ALJ's determination that there was probable cause for Davis's arrest.

### Request and Refusal to Submit Specimen

In the trial court, Davis asserted the ALJ erred in finding he was asked to provide a breath specimen and that he refused to do so. DPS argues that Flores's report indicates that he requested a breath specimen from Davis and read Davis the statutory warning before Davis refused, which constitutes substantial evidence of Flores's proper request for and Davis's refusal to provide a specimen. We agree.

Davis argued at the administrative hearing there was no proof of either a request or a refusal of a breath specimen because Flores did not check the boxes on the DIC-24 form indicating that Davis refused to provide a breath specimen and refused to sign the warning form. But Flores's report narrative clearly states "[Davis] was read the Statutory Warnings at which time [he] refused to give consent to a breath sample…[Davis] was transported to the city detention center where a warrant was taken out for a mandatory blood [sic]." Although there is a conflict between Davis's testimony and Flores's report, we cannot substitute our judgment for that of the ALJ. *See Pruitt*, 75 S.W.3d at 639. It was incumbent upon the ALJ to determine the credibility of Davis's testimony and weigh it against Flores's report. *Gonzales*, 276 S.W.3d at 91; *Sanchez*, 82 S.W.3d at 511. We conclude Flores's report demonstrates some reasonable basis for the ALJ's decision. There is more than a scintilla of evidence that Flores properly requested a breath specimen from Davis and that Davis refused.

Based on the foregoing reasons, we reverse the trial court's judgment and render judgment reinstating the administrative suspension of Davis's driver's license for 180 days.

Steven C. Hilbig, Justice